**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE: HOTH HOLDINGS, LLC

_____                    Consolidated Case No. 6:09-cv-
                                                           1660-Orl-28

FORGE CAPITAL PARTNERS, et . al.

                          Appellants,

v.

HOTH HOLDINGS, LLC,

                          Appellee.
_____/


IN RE: MIRABILIS VENTURES, INC.

_____

FORGE CAPITAL PARTNERS, et. al.                            Case No. 6:09-cv-1659-Orl-28

                          Appellants,

v.

MIRABILIS VENTURES, INC.,

                          Appellee.
_____/


---

### APPELLANTS' INITIAL BRIEF

---


                                        BART R. VALDES
                                        Florida Bar Number 0323380
                                        Attorneys for Appellants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

STATEMENT OF BASIS OF APPELLATE JURISDICTION ................................. v

STATEMENT OF ISSUES PRESENTED ........................................... 6

APPLICABLE STANDARD OF APPELLATE REVIEW ...................................... 6

STATEMENT OF THE FACTS AND OF THE CASE ......................................... 2

ARGUMENT ................................................................................... 6

I.     MIRABILIS WAS FULLY CONTROLLED BY FRANK AMODEO IN ORDER TO COMMIT MASSIVE CRIMINAL TAX FRAUD.  AS SUCH, IT HAS NO STANDING OR ABILITY TO MAINTAIN THIS ACTION. ................................................. 6

II.    EVEN IN THE ABSENCE OF ANY FINDING OF "BAD FAITH" OR OTHER ILLEGITIMATE PURPOSE, MIRABILIS HAD NO HOPE OF REORGANIZING AT THE TIME THIS ACTION WAS FILED AND THIS CASE SHOULD BE DISMISSED, OR SHOULD BE CONVERTED TO A CHAPTER 7 CASE. ............................................... 10

   A.   THIS CASE WAS FILED WITH THE INTENT TO LIQUIDATE AND NOT WITH THE INTENT TO REORGANIZE, AND AS SUCH, IT SHOULD BE DISMISSED. .......................................................................... 10

   B.   IN THE ALTERNATIVE, THE CASE SHOULD BE CONVERTED TO A CHAPTER 7 PROCEEDING. ............................................................... 13

III.   THE FILING OF THIS BANKRUPTCY WAS AN UNAUTHORIZED ACTION BECAUSE THE UNDISPUTED EVIDENCE PROVES THAT THE BOARD MEMBER AND OFFICER WHO AUTHORIZED THE FILING OF THIS ACTION WERE NOT DULY ELECTED. ................................................................ 15

i

**IV.    THE ACTION TAKEN BY MIRABILIS WAS ALSO VOID AS A MATTER OF LAW UNDER NEVADA LAW AND GENERAL CORPORATE LAW.**............................. 19

**CONCLUSION** ...................................................................................................... 22

**CERTIFICATE OF SERVICE** ............................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

Bendiz Home Systems, Inc. v. Hurston Enterprises, 566 F.2d 1039 (5th Cir.1978) ..................... 8

Berman v. Riverside Casino Corp., 247 F.Supp. 243 (D.C. Nev. 1964). ..................................... 21

Brotherhood's Relief and Compensation Fund v. Cagnina, 155 So.2d 820 (Fla. 2d DCA 1963). 16

Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972................................................. 8

Cheshire v. First Presbyterian Church, 17 S.E. 2d 344 (N.C.) ................................................... 19

Citizen's State Bank v. Moore, 57 P. 115 (Kan. 1899) ............................................................... 19

Feltman v. Prudential Bache Securities, 122 B.R. 466 (S.D. Fla. 1990)....................................... 6

Freeman v. Dean Witter Reynolds, 865 So.2d 543, 551 (Fla. 2d DCA 2003) ............................. 9

Furness v. Lilenfield, 35 B.R. 1006, 1011 (D. Md. 1983)............................................................ 13

Gaddis v. Stardust Hills Owners Ass'n, Inc., 804 N.E.2d 231 (Ind. App. 2004)......................... 20

Grand Lodge Knights v. Harris, 124 Fla. 1, 167 So. 814 (Fla. 1936......................................... 16

Hall v. Tennessee Dressed Beef Co., 957 S.W.2d 536  (Tenn. 1997)......................................... 21

Ihrig v. Frontier Equity Exchange Ass'n, 128 P.3d 993 (Kan. App. 2006) ................................ 20

In re B.S. Livingston & Co., Inc., 186 B.R. 841(D. N.J. 1995)...................................................... v

In re Holmes, 298 B.R. 477 (Bankr. M.D. Ga. 2003)................................................................... 12

In re JLJ Inc., 988 F.2d 1112(11th Cir. 1993). ........................................................................... vi

In re Lyons Transportation Lines, Inc., 123 B.R. 526 (Bankr. W.D. Pa. 1991) .......................... 11

In re: Albany Partners Ltd., 749 F.2d 670, 674................................................................................ 13

In re: Pacific Forest, 335 B.R. 910, 922-23 (S.D. Fla. 2005). .................................................. v, 11

In re: Wellwood Corp., 60 B.R. 319, 321 (Bkrtcy. M.D. Fl. 1986)............................................ 14

Kanov v. Bitz, 660 So.2d 1165 (Fla. 3d DCA 1995)...................................................................... 9

Loop Corp. v. United States Trustee, 290 B.R. 108 (D. Minn. 2003) ........................................ 14

Mediators, Inc. v. Manney (In re Mediators, Inc., 105 F.3d 822, 826 (2d Cir.1997) ................. 10

Nisselson v. Lernout, 469 F.3d 143 (1st Cir.2006)...................................................................... 10

Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1151 (11th
    Cir.2006) ...................................................................................................................................... 9

Plank v. Arban, 241 So.2d 198 (Fla. 4th DCA 1970).................................................................... 9

Richards v. Attleborough Nat'l Bank, 19 N.E. 353 (Mass. 1889)................................................ 19

Robertson v. Perkins, 129 U.S. 233 ............................................................................................. 19

Rushing v. Gold Kist, Inc., 567 S.E.2d 384 (Ga. App. 2002)...................................................... 20

Schraft v. Leis, 236 Kan. 28, 35, 686 P.2d 865 (Kan. App. 1984) .............................................. 20

Surf Club v. Long, 325 So.2d 66 (Fla. 3d DCA 1975) ................................................................. 15

Wallace & Sons v. Walsh, 25 N.E. 1076 (Ct. App. NY 1890)...................................................... 19

Welborn v. Whitney, 126 P. 2d 263 (Okla. 1942) ....................................................................... 19

Word of Life Ministry v. Miller, 778 So. 2d 360 (Fla. 1st DCA 2001)....................................... 15

**Statutes**

11 U.S.C. § 1112................................................................................................................. 12, 14

11 U.S.C. § 1123......................................................................................................................... 12

11 U.S.C. § 1129................................................................................................................ 10, 12, 13

11 U.S.C. § 1129(a)(11).............................................................................................................. 10

11 U.S.C. § 363 .......................................................................................................................... 12

11 U.S.C. § 363(b)...................................................................................................................... 10

28 U.S.C. § 1292(b) ...................................................................................................................... v

28 U.S.C. § 158(a)(3)............................................................................................................. v

**Other Authorities**
28 C.J.S., "Duly", p. 585...................................................................................................... 19

**Rules**
Rule 8013, Fed. R. Bank. Proc. (2009)............................................................................... vi

## <u>STATEMENT OF BASIS OF APPELLATE JURISDICTION</u>

This Court has discretionary jurisdiction to review interlocutory orders entered by bankruptcy courts, pursuant to 28 U.S.C. § 158(a)(3), by granting leave to appeal such orders. To determine whether to exercise jurisdiction, district courts in the Eleventh Circuit are guided by 28 U.S.C. § 1292(b), which contains the criteria for certifying an appeal of an interlocutory order of the district court to the circuit court of appeals.  <u>Colonial Bank v. Freeman (In re Pacific Forest Products Corp.)</u>("Pacific"), 335 B.R. 910, 919 (Bankr. S.D. Fla. 2005).

Pursuant to Section 1292(b), a district court may grant leave to appeal an interlocutory bankruptcy court order if the subject issue: "(1) involves a controlling question of law, (2) as to which there is a substantial ground for difference of opinion, and (3) is such that an immediate appeal would advance the ultimate termination of the litigation."  <u>Id</u>.  As demonstrated below, the issues involved in this appeal meet the requisite criteria and leave to appeal should be granted.  <u>In re B.S. Livingston & Co., Inc.</u>, 186 B.R. 841(D. N.J. 1995)(holding that the denial of a motion to dismiss in a bankruptcy proceeding is an appealable order).

## STATEMENT OF ISSUES PRESENTED
## AND APPLICABLE STANDARD OF APPELLATE REVIEW

The questions implicated by this appeal are as follows:

1.    Did the Bankruptcy Court err when it ruled that the current bankruptcy filing was not an *ultra vires* act of Mirabilis?

2.    Did the Bankruptcy Court err when it ruled that a company with no ability or intent to reorganize can initiate and file a Chapter 11 Petition under the Bankruptcy Code with the sole intent to self-liquidate?

3.    Did the Bankruptcy Court err when it ruled that a Mirabilis and Hoth have standing to bring this action even though it was a sham company that was controlled by Frank Amodeo for an improper purpose?

4.    Did the Bankruptcy Court err when it denied the request to convert this case to a Chapter 7 liquidation?

5.    Did the Bankruptcy Court err when it ruled that a single asset company with no ability or intent to reorganize can initiate and file a Chapter 11 Petition under the Bankruptcy Code with the sole intent to self-liquidate in order to stop a pending state court case?

***

In reviewing a bankruptcy court order this Court functions as appellate court. This Court is permitted to review the Bankruptcy Court's legal conclusions de novo, and review the factual findings under the "clearly erroneous" standard. Rule 8013, Fed. R. Bank. Proc. (2009); In re JLJ Inc., 988 F.2d 1112(11th Cir. 1993). Appellants seek to have this Court reverse the Order on Appeal and direct the Bankruptcy Court to dismiss the Chapter 11 Proceeding of Mirabilis and Hoth.

## STATEMENT OF THE FACTS AND OF THE CASE

This matter is an appeal from a bankruptcy proceeding involving Mirabilis Ventures, Inc. ("Mirabilis"), and its wholly-owned and controlled subsidiary, Hoth Holdings, LLC ("Hoth"). (DKT. 268)[1]. On April 25, 2008, the United States of America filed a forfeiture action (U.S.A. v. Real Property, Case Number 6:08-cv-00670-ACC-KRS, United States District Court for the Middle District of Florida) seeking the seizure of all of Mirabilis' assets, including its claims and properties to be accrued in this bankruptcy case. (DKT. 71, 76, 88, 204, 225). In the civil forfeiture action, the United States government alleged that Frank Amodeo, the controlling principal of Mirabilis, perpetrated a massive fraud whereby he used Mirabilis and its wholly owned subsidiaries to steal payroll taxes and then purchase properties and businesses around the country for his own enrichment. (DKT. 71, 76, 88, 204, 225).

In an effort to avoid the forfeiture of certain assets, and to assist Frank Amodeo in his impending criminal prosecution (as is detailed further below), on May 28, 2008, Mirabilis filed for Chapter 11 bankruptcy in the United States Bankruptcy Court in the Middle District of Florida (In re: Mirabilis, Case Number 6:08-bk-4327-KSJ, United States Bankruptcy Court for the Middle District of Florida). (DKT 1). Additionally, Hoth filed for Chapter 11 bankruptcy in the United States Bankruptcy Court in the Middle District of Florida (In re: Hoth Holdings, LLC, Case Number 6:08-bk-4328-KSJ, United States Bankruptcy Court for the Middle District of Florida). The Appellants are creditors and/or adversary defendants in the Hoth and/or Mirabilis cases. (DKT. 71, 76, 88, 204, 225).

---

[1] Unless stated otherwise, the citations to the record herein are citations to the record as set forth in the docket in the main Mirabilis bankruptcy proceeding (Case Number 6:08-bk-4327-KSJ).

The United States also brought a criminal action against Frank Amodeo on August 6, 2008 (U.S.A. v. Amodeo, Case Number 6:08-cr-176-Orl-28GJK, United States District Court for the Middle District of Florida).  (DKT. 71, 76, 88, 204, 225).   On September 23, 2008, Mr. Amodeo pled guilty to five felonies (including conspiracy, failure to collect and remit payroll taxes, and obstruction of justice) arising out of his massive fraud on the IRS.  (DKT. 71, 76, 88, 204, 225). Mr. Amodeo admitted through his plea agreement that he controlled various companies (including Mirabilis) for the fraudulent and illegal purpose of conspiring to "divert payroll tax funds. . .and utilize those funds for other purposes."  Mr. Amodeo admitted that he used the illegally diverted payroll taxes to fund the operations of Mirabilis (which in turn, funded the operations of its subsidiaries including Hoth Holdings, LLC, and AEM, Inc.).  In fact, Mr. Amodeo admits that he simply used Mirabilis and other companies to move the proceeds of his fraud to himself and various business associates at his direction.  (DKT. 71,76, 88; Plea Agrmt. at 18).  Mr. Amodeo also admits that he defrauded the government out of no less than $172,000,000.00. (DKT. 71,76, 88; Plea Agrmt. at 35).  Judgment of conviction was entered against Mr. Amodeo on May 27, 2009, and Amodeo was sentenced to 270 months in prison.

Also on September 23, 2008, the United States (the largest creditor in this Bankruptcy case) filed the Motion to Dismiss Instant Case Based Upon Its Bad Faith Filing and filed a supplement to the Motion to Dismiss on September 29, 2008. (collectively, "United States' Motion to Dismiss").  (DKT. 71, 76.).  The United States argued that the Chapter 11 Petition was not filed for a valid reorganizational purpose, but rather to assist Mr. Amodeo in his criminal case in the hopes of reducing his sentence.  The United States' supplement presents additional evidence that the Bankruptcy Petition was not filed in good faith – that the

bankruptcy violated the Bylaws of Mirabilis and, therefore, neither Mirabilis' president nor counsel had authority to file the bankruptcy.

Appellants were unaware of the massive criminal fraud being perpetrated by Mr. Amodeo.  In fact, the Appellants were victims of such fraud as they sold their business and entered into other business agreements with Mirabilis only to be severally damaged by Mirabilis' fraud, or by Mirabilis materially breaching various agreements.  On October 3, 2008, Forge and Affiliated Creditors filed their Motion to Dismiss Mirabilis Ventures, Inc.'s Chapter 11 Filing or, In the Alternative, to Convert to Chapter 7, and Incorporated Memorandum of Law ("Forge's Motion to Dismiss"). (DKT. 88).  Forge presented the same arguments as the United States, and Forge additionally argued that Mirabilis was a sham company that was used to further Mr. Amodeo's criminal activities, and therefore, Mirabilis lacked any corporate independence prior to the time the bankruptcy was filed.  (DKT. 71, 76, 88, 204, 225).

The Bankruptcy Court scheduled an evidentiary hearing on Forge's Motion to Dismiss for October 17, 2008.  See Notice of Evidentiary Hearing (DKT. 91).  However, before the scheduled evidentiary hearing took place, the United States and Forge, tentatively and independently, settled their disputes with Mirabilis.  The United States' main concern was their ability to seize the property of Mirabilis, which Mirabilis claimed the Government could not do in light of the automatic stay.  See Motion for Approval of Compromise By and Between Debtors and the United States of America, ¶ 18.  ("Compromise") (DKT. 101).  The United States asserted (and Mr. Amodeo admitted by way of his Plea Agreement) that Mr. Amodeo used the Debtor's funds and assets to commit fraud against third parties, and some of those assets, which are titled in the name of Mirabilis, are subject to civil and criminal forfeiture.  Id.  After

Mirabilis and United States reached an agreement regarding what assets would be forfeited to the United States and what assets would be retained by Mirabilis' bankruptcy estate, as a part of the compromise, the United States agreed to withdraw with prejudice all pending motions, one of which was the United States' Motion to Dismiss. Id. at ¶ 31. Accordingly, the United States' Motion to Dismiss was withdrawn with prejudice on February 26, 2009 (DKT. 140).

On October 30, 2008, Mirabilis was indicted on seventeen counts of federal tax law violations, including conspiracy and wire fraud. See United States v. Mirabilis Ventures, Inc., Case No. 6:08-cr-00231-JA-KRS-4. (As stated above, Mirabilis' principal, Frank Amodeo, was also indicted and pled guilty to five charges, including conspiracy, failure to collect and remit payroll taxes, and obstruction of an agency proceeding. See United States v. Amodeo, Case No. 6:08-CR-00176-JA-GJK-1). (DKT. 71, 76, 88, 204, 225).

The settlement between Forge and Mirabilis, however, never came to fruition for reasons not material to this appeal. Forge's Motion to Dismiss, therefore, remained at issue, and on April 23, 2009, certain movants filed a Joinder in Forge's Motion to Dismiss ("Movants' Motion to Dismiss"). The movants' Motion to Dismiss adopted the arguments set forth in the United States' Motion to Dismiss and raised additional arguments as well. (DKT. 71, 76, 88, 204, 225).

Although, the Bankruptcy Court initially scheduled an evidentiary hearing, the Bankruptcy Court refused to hold an evidentiary hearing when the bad faith filing issues resurfaced. (DKT. 80, 91). Presumably, the Bankruptcy Court anticipated that a Plan might be confirmed in the near future, and therefore, desired to drive the proceedings forward in a rush to confirmation. See, e.g., Transcript of August 26, 2009, Hearing, p. 15, lines 2-12 (stating that "considering that we are on the cusp of potentially confirming the plan in less than a month, dismissal will not be the avenue we will be pursuing.").

The Bankruptcy Court denied the Creditors' Motion to Dismiss, the other movants' Motion to Dismiss (collectively, "Motions to Dismiss") in the Order on Appeal.  (DKT. 268). The Bankruptcy Court based its denial of the Motions to Dismiss on the findings of facts and conclusions of law it made (without an evidentiary hearing) at the August 26, 2009, hearing.  On or about September 14, 2009, the Appellants timely filed this appeal.  Since the Appellants had filed basically identical Motions to Dismiss in both the Hoth and the Mirabilis bankruptcy cases, this Court entered an Order dated October 21, 2009, stating that both appeals will be considered together.  On or about October 23, 2009, an Order was entered confirming that both appeals were assigned to the Honorable Gregory A. Presnell.

## ARGUMENT

## I.   MIRABILIS WAS FULLY CONTROLLED BY FRANK AMODEO IN ORDER TO COMMIT MASSIVE CRIMINAL TAX FRAUD.  AS SUCH, IT HAS NO STANDING OR ABILITY TO MAINTAIN THIS ACTION.

Mirabilis and Hoth lack any independent corporate identity and are shams that served primarily the goal of furthering Frank Amodeo's various criminal and fraudulent schemes. Courts have repeatedly emphasized that a corporation, particularly one seeking Chapter 11 bankruptcy protection, must be a legitimate company with appropriate independence and some hope of reorganizing at the end of the Chapter 11 process in order to pursue a legitimate business purpose. This possibility does not exist in the case of Mirabilis.

The law requires that a debtor must be a legitimate corporation to take advantage of the bankruptcy system.  A company that was used chiefly in the past as a sham for an individual to perpetrate various frauds on creditors does not meet this standard.  Feltman v. Prudential Bache Securities, 122 B.R. 466 (S.D. Fla. 1990), is directly on point. In Feltman, the court was presented with a case where the Chapter 11 trustee in bankruptcy pursued claims on behalf of

unsecured creditors against the debtor's former officer and the accounting firm it hired.   The trustee alleged that the former principal and the outside firms formed a conspiracy that had harmed the Chapter 11 debtor. Id. at 468-469.   In Feltman, the court rejected this ploy, finding that the debtor corporation was a "sham corporation," a "dummy corporation," and a means whereby the companies' former principal "camouflaged his illegal activity and used the money . . . . to buy homes, automobiles, and other expensive items, as well as to funnel cash directly to his family." Id. at 469.   The Southern District of Florida concluded that the corporate debtors were alter egos of their former principal, a convicted criminal who embezzled $9,700,000.00. The parallels with Mirabilis are self-evident.

The Feltman court found that the trustee (on behalf of the corporate debtors' estate and specified creditors) did not have standing to bring any claims against the alleged fraudfeasors, ruling as follows:

> "All corporations are legal fictions. In this case, however, FIP and FFP were simply fictitious. The complaint alleges that FIP and FFP were sham corporations, alter egos with no corporate identity separate from Henry Gherman.   As the corporations were essentially only conduits for stolen money, any injury to the debtors in this case must be substantially coterminous with the injury to the defrauded creditors.   Everything Gherman stole from the debtor corporations, the debtors had stolen from the creditors.   Thus, any alleged injury to the debtors is as illusory as was their corporate identity."

Id. at 473-474.

Mirabilis and Hoth are nothing more than shell companies created for the purpose of furthering the criminal activity of Frank Amodeo, as admitted by Frank Amodeo himself under penalty of perjury.   In his Plea Agreement—which constitutes a judicial admission—Frank Amodeo admits that he controlled these companies; he took money directly from these companies; and these

7

companies were formed for the sole purpose of defrauding others.[2]  (Plea Agrt. at 17-20).

Additionally, the record before the Bankruptcy Court (which is undisputed) contains affidavits of

two former Mirabilis officials who testified that the whole purpose of the bankruptcy was not to

make money for shareholders, creditors, or the United States, but instead to yield funds in the hopes

that clearing up Mirabilis' balance sheet with the IRS would help reduce the criminal punishment

Frank Amodeo receives in his criminal sentencing.  (U.S. Mot. To Dismiss at 2-4).

Moreover, Mirabilis and its subsidiaries have no corporate identity separate and apart from

Frank Amodeo.  Since Mirabilis could not continue to harass its erstwhile victims with lawsuits

outside of bankruptcy—due to the impact of the government's civil forfeiture of corporate assets

and the companies' lack of a *bona fide* corporate existence—they cannot proceed as such within

bankruptcy.  Feltman, 122 B.R. at 472 ("the trustee's ability to bring suits turns on the debtor's

rights under non-bankruptcy law").

"Under Florida law, the separate identity of a corporation will be disregarded on proof

that it is a 'mere instrumentality' of, that is to say, it is completely dominated by, another

corporation or individual, and that it is a device or sham to mislead creditors or exists for some

other fraudulent purpose." Bendiz Home Systems, Inc. v. Hurston Enterprises, 566 F.2d 1039

(5th Cir.1978); See also Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972)

---

[2] Admissions such as these should bind both Mirabilis and the Court.  The law is clear on the preclusive effect of Frank Amodeo's guilty plea.  See Floyd v. Dunson (In re Ramirez Rodriguez), 209 B.R. 424, 433 (Bankr.S.D.Tex.1997) ("[T]he criminal conviction of Ms. Rodriguez based on the debtors' operation of a Ponzi scheme conclusively establishes fraudulent intent, and precludes the defendant from relitigating this issue."); Martino v. Edison Worldwide Capital (In re Randy), 189 B.R. 425, 439 (Bankr.N.D.Ill.1995) (holding that debtor's actual intent to defraud investors was preclusively established by the jury verdict against him in a criminal proceeding); Emerson v. Maples (In re Mark Benskin & Co.), 161 B.R. 644, 648 (Bankr.W.D.Tenn.1993) ("The debtors' intent to defraud creditors was established by the guilty pleas to the related criminal charges and preclusive effect may be given to those guilty pleas as factual findings to the extent that the debtors' intent to defraud creditors is required in this adversary proceeding.").

(holding that bankruptcy trustee did not have standing to bring actions on behalf of creditors where bankrupt entity and defendant were *in pari delicto* with respect to creditors' claims). As such, Mirabilis does not even have standing to maintain the subject action since the only monies it could possibly recover derive from or are substantially offset by the monies the Plaintiffs stole from the United States of America.

In instances where an entity exists solely as an instrumentality of fraud, controlled by an individual who has used that entity for fraudulent purposes, courts must disregard the corporate status of the entity. Kanov v. Bitz, 660 So.2d 1165 (Fla. 3d DCA 1995) (holding that the critical issue in the determination of whether the corporate veil will be pierced for the imposition of personal liability is whether the corporate entity was organized or operated for an improper or fraud purpose.); Plank v. Arban, 241 So.2d 198 (Fla. 4th DCA 1970)(holding that equity will not allow a corporate veil to cover fraud or injustice, and to prevent such the corporate entity may be disregarded and the corporation and individual or individuals owning all of its stock and assets treated as identical).

Further, a court should not permit a sham company to maintain a legal action to recover monies from others where the corporation is nothing more than a vehicle to perpetrate fraud. See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1151 (11th Cir.2006) ("If a claim of ETS would have been subject to the defense of *in pari delicto* at the commencement of the bankruptcy, then the same claim, when asserted by the trustee, is subject to the same affirmative defense.") Freeman v. Dean Witter Reynolds, 865 So.2d 543, 551 (Fla. 2d DCA 2003) (finding that *in pari delicto* doctrine barred a receiver's claims when the corporation was created by the wrongdoer to "dupe the customers.").

The state law of *in pari delicto* and the federal treatment of the issue are the same. When a corporation is an instrumentality of a criminal individual, it cannot pursue claims in bankruptcy, whether to benefit itself or ostensibly to benefit creditors.   In <u>Nisselson v. Lernout,</u> 469 F.3d 143 (1st Cir.2006), the First Circuit held that "the trustee may assert only those claims that [the debtor] could have asserted prior to seeking the protection of the bankruptcy court." <u>Id.</u> at 153 (citing <u>Mediators, Inc. v. Manney (In re Mediators, Inc.</u>, 105 F.3d 822, 826 (2d Cir.1997)). The court reasoned that "a trustee in bankruptcy cannot and does not acquire rights or interests superior to, or greater than, those possessed by the debtor." <u>Id</u>.

Mirabilis' chief purpose under Frank Amodeo was to facilitate an enormous scheme of tax evasion.   There is no evidence in the record to dispute that Frank Amodeo controlled the subject entities or that the purpose of the entities was to further his massive fraud.   On the contrary, the sole record evidence is that Frank Amodeo used these sham companies for the illegal purpose of stealing pay-roll taxes with no real legal existence separate and apart from Frank Amodeo.  Mirabilis and Hoth cannot now use the bankruptcy court to allow these "sham" entities to pursue claims against creditors and avoid their lawful debts.

**II.     EVEN IN THE ABSENCE OF ANY FINDING OF "BAD FAITH" OR OTHER ILLEGITIMATE PURPOSE, MIRABILIS HAD NO HOPE OF REORGANIZING AT THE TIME THIS ACTION WAS FILED AND THIS CASE SHOULD BE DISMISSED, OR SHOULD BE CONVERTED TO A CHAPTER 7 CASE.**

**A.     THIS CASE WAS FILED WITH THE INTENT TO LIQUIDATE AND NOT WITH THE INTENT TO REORGANIZE, AND AS SUCH, IT SHOULD BE DISMISSED.**

It is undisputed that this Chapter 11 Petition was <u>filed</u> with the intent to liquidate Mirabilis.   The Creditors do not dispute that Chapter 11 allows for certain liquidation proceedings within the context of reorganization.  Specifically, 11 U.S.C. § 1129(a)(11) (dealing with confirmation of plans under Chapter 11) and 11 U.S.C. § 363(b) (allowing the sale of the

property of an estate) contemplate certain instances when liquidation procedures are appropriate within a Chapter 11 proceeding.  However, these provisions of the Code do not allow the very essence and core of Chapter 11 – reorganization – to be turned on its head.  Instead, these provisions are to exist in harmony and complement the reorganization purposes of Chapter 11.

Although the Eleventh Circuit cases cited by the Appellants in their pleadings suggest that Chapter 11 Petitions cannot be filed with the intent to liquidate, no Eleventh Circuit case law directly states this proposition.  In such circumstances, a court may consider authority from beyond the circuit in which it sits in determining whether a substantial ground for difference of opinion exists. In re: Pacific Forest, 335 B.R. 910, 922-23 (S.D. Fla. 2005).  In re Lyons Transportation Lines, Inc., 123 B.R. 526 (Bankr. W.D. Pa. 1991), wholly rejects the position that Chapter 11 Petitions can be filed with the intent to liquidate.  Lyons held that "there is no authority in the Bankruptcy Code allowing a debtor to file a petition for relief under Chapter 11 for the purpose of self-liquidation." Id. at 534.

The Lyons Court addressed the same argument made by Mirabilis, which the Bankruptcy Court adopted in its Order – that a Chapter 11 Petition can be filed with the intent to liquidate because certain provisions of Chapter 11 contemplate liquidation.

> "The Debtors argue that the filing of a Chapter 11 case with no intent to attempt rehabilitation and with no hope of rehabilitation and solely for the purpose of liquidating assets under the control of the Debtor, with the advice and perhaps supervision of a committee of creditors is permissible under the Bankruptcy Code, citing § 1123 and § 363(b) … The argument is that [§ 1123] together with § 363(b) … authorizes a debtor to utilize Chapter 11 as a means of self-liquidation. To the contrary, we read these provisions as necessary elements in a statutory scheme which provides flexibility in financial restructuring for the rehabilitation of a debtor's business."

Id. at 530.  The Court goes on to say that the issue to be determined under 11 U.S.C. § 1112 (the Section at issue in this case) is not whether the Debtor may take advantage of the provisions contemplating liquidation in Chapter 11 (11 U.S.C. § 363 and 11 U.S.C. § 1123), but "the issue is whether debtor may maintain itself in the Chapter 11 for the purpose, *from the beginning*, of liquidation." (emphasis added)  Id.at 531.  In the instant case, therefore, the Bankruptcy Court's focus on confirmation of the Plan and §1123 was improper.  The proper focus is the time of filing.

Obviously, businesses who file a Petition under Chapter 11 are distressed entities. Therefore, reorganizations of these troubled businesses are not always successful.  Accordingly, the two provisions referencing liquidation in Chapter 11 contemplate such difficulties faced by these struggling entities and provide methods to efficiently continue the bankruptcy process – specifically, allowing the sale of one's assets (11 U.S.C. § 363) or allowing for a plan of liquidation (11 U.S.C. § 1129).

The Bankruptcy Court found that "there are many cases that state that liquidation is a perfectly appropriate reason for filing a Chapter 11 case" and went on to cite In re Holmes, 298 B.R. 477 (Bankr. M.D. Ga. 2003) as an example of such a case.  See Transcript of August 26, 2009, Hearing, p. 11, lines 14-18.  The Bankruptcy Court also cited to 11 U.S.C. § 1129(a) (which allows for plans of liquidation) as evidence that Chapter 11 Petitions can be filed with the intent to liquidate.  See Transcript of August 26, 2009, Hearing, p. 11, lines 24-25.

The In re Holmes case relied on by the Bankruptcy Court does not stand for the proposition that "liquidation is a perfectly appropriate *reason for filing* a Chapter 11 case."  See Transcript of August 26, 2009, Hearing, p. 11, lines 15-16 (emphasis added).  Rather, In re

<u>Holmes</u>, 298 B.R. at 484, focuses on the confirmation of a Chapter 11 Liquidation Plan under 11 U.S.C. § 1129.

Further, without good faith—as evidenced by the prospect of reorganization and appropriate corporate independence prior to filing—the bankruptcy case can and should be dismissed for "good cause" as a "bad faith" filing. <u>See</u>, <u>e.g.</u>, <u>In re: Albany Partners Ltd.</u>, 749 F.2d 670, 674 (11th Cir. 1984) (dismissing Chapter 11 bankruptcy as a bad faith filing when there was no hope of reorganization); <u>Furness v. Lilenfield,</u> 35 B.R. 1006, 1011 (D. Md. 1983) (holding that court had duty to dismiss case where there was little evidence that actual creditors would benefit from company reorganization).

This case did not begin with the intent to reorganize Mirabilis and then transform into a liquidating Chapter 11. There is no factual dispute that there was <u>never</u> any ability or intent to reorganize in accordance with the legitimate aims and objectives of Chapter 11. Counsel for the Debtor so stated on the record at the June 30, 2009, hearing: "Here, this has always been a liquidating case. I don't think that there's anybody who would argue that this has not come into this Court as a liquidating case." <u>See</u> June 30, 2009, Hearing Transcript, page 66, lines 20-23. The Bankruptcy Court acknowledged the same in its oral ruling denying the Motions to Dismiss stating "that's true Mirabilis never had any intention to reorganize." <u>See</u> Transcript of August 29, 2009, Hearing, p. 11, lines 9-10. As such, based upon the record before this Court, the pending bankruptcy cases must be dismissed.

## B.   IN THE ALTERNATIVE, THE CASE SHOULD BE CONVERTED TO A CHAPTER 7 PROCEEDING.

Chapter 11 Bankruptcy provides a transitional reprieve for a company that is insolvent. Without some prospect of eventual reorganization and emergence from bankruptcy, the more laborious and time-consuming Chapter 11 procedures serve no function other than generating

legal fees and other expenses, as well as absorbing judicial resources.  In such a case, the case should be dismissed or converted to Chapter 7.  See, e.g., Loop Corp. v. United States Trustee, 290 B.R. 108 (D. Minn. 2003) ("Absence of likelihood of rehabilitation is satisfied by showing that the debtor is unable to get the business up and running again on a firm base.").

The remedy of dismissal does not even require a showing of subjective bad faith.  The same considerations govern dismissal as conversion to Chapter 7.  In the case of In re: Wellwood Corp., 60 B.R. 319, 321 (Bkrtcy. M.D. Fl. 1986), the bankruptcy court held that that the debtor's Chapter 11 case was not filed in good faith and should be dismissed for cause because the debtor corporation had no salvageable economic value and could not be rehabilitated.  In the case of either a dismissal or case of conversion, the statute merely requires a showing of good cause.  11 U.S.C. § 1112(b).  In the exercise of its discretion, the same factors that permit the dismissal of a case allow conversion to Chapter 7.

Chief among these factors favoring conversion or dismissal is that a bankruptcy filing serves an improper purpose—such as preventing the repossession of property by secured creditors where there are few other assts, as here—and the small chance of reorganization.  Mirabilis, so far as is known, now has one employee:  its president, R.W. Cuthill.  The behemoth Ponzi scheme that was Mirabilis has collapsed dramatically, on the same scale as the declining fortunes of its former leader and alter ego, Frank Amodeo.

As stated in open court, to the United States trustee, and through other informal means, the anticipated future of Mirabilis is to serve as an umbrella organization to pursue various lawsuits against Mirabilis' former customers and business partners.  The funds received will apparently go to either the government or various Mirabilis subsidiaries, which Mirabilis used to fund itself with the subsidiaries' customers diverted tax monies until the scam had been

discovered.  None of these facts support a reorganization.  A review by the Court will show that no real reorganization is possible, not least because the Mirabilis name contains nothing but ill will and negative connotations in the business community.  Further, even if its reputation were less sullied, Mirabilis today has no structures, procedures, plans, factories, offices, assets, or any of the other indicia of a company capable of reorganization that is merely temporarily obstructed by the demands of creditors.  An insolvent company that cannot be realistically reorganized does not belong in Chapter 11.  Nothing Mirabilis has demonstrated to the Court, Forge and Affiliated Creditors, the United States, or anyone else suggests otherwise.  The reality is that Frank Amodeo directed that Mirabilis and Hoth file the bankruptcy actions to try to circumvent the government's forfeiture proceedings in order to be able to marshal assets and, hopefully, reduce the prison sentence handed down to him.  This cannot be deemed to be a proper legal function of the bankruptcy courts.

## III.   THE FILING OF THIS BANKRUPTCY WAS AN UNAUTHORIZED ACTION BECAUSE THE UNDISPUTED EVIDENCE PROVES THAT THE BOARD MEMBER AND OFFICER WHO AUTHORIZED THE FILING OF THIS ACTION WERE NOT DULY ELECTED.

Mirabilis's pursuit of bankruptcy is an *ultra vires* action since the director and officer who authorized the filing were not duly elected and the amendment of the Bylaws was invalid.[3] "A corporation must act in accordance with its articles of incorporation and duly adopted by-laws."  Word of Life Ministry v. Miller, 778 So. 2d 360 (Fla. 1st DCA 2001). "The general rule established long ago is that a corporation is prohibited from amending its by-laws so as to impair a member's contractual rights."  Surf Club v. Long, 325 So.2d 66 (Fla. 3d DCA 1975); Grand

---

[3] Mirabilis alleges in its schedules that Robert Moreyra is a shareholder of Mirabilis.  As such, based upon this assertion, he has standing to raise this issue.

Lodge Knights v. Harris, 124 Fla. 1, 167 So. 814 (Fla. 1936); Brotherhood's Relief and Compensation Fund v. Cagnina, 155 So.2d 820 (Fla. 2d DCA 1963).

There is a major issue as to whether the Debtor had the proper corporate authority to even bring this action.  On or about October 24, 2004, an entity known as Stellar Industries, Inc., filed Amended and Restated Articles of Incorporation and became Mirabilis Ventures, Inc. (also referred to as "Mirabilis").  Since that filing, and through the date of the filing of this bankruptcy action, Mirabilis has operated under the Amended and Restated Articles of Incorporation.   Importantly, the Amended and Restated Articles of Incorporation provide in "Article VIII- Amendments" that "**this corporation reserves the right to amend**, alter, change or repeal any provision contained in . . .**its Bylaws in the manner now or hereafter prescribed by** . . .**the corporation's Bylaws**. . ." (Emphasis added).  As such, any amendment to the Bylaws must be in the manner prescribed by the Bylaws.

On or about October 1, 2005, Mirabilis enacted the "Bylaws of Mirabilis Ventures, Inc." The Bylaws provide the exclusive manner for the election of members of the Board of Directors. According to Article III, Section 3.04 of the Bylaws of Mirabilis, any vacancy on the Board of Directors must be filled by "the affirmative vote of two-thirds (2/3) **of the issued and outstanding shares** of the Corporation."  The Bylaws, therefore, mandate that all new directors be must approved by a vote of 2/3 of all outstanding shareholders.  Under no circumstances can the Board of Directors fill any vacancies.  Rather, the election of directors must be done solely by the shareholders pursuant to the Bylaws.

The Bylaws also provide the sole and exclusive manner in which they can be amended. Pursuant to Article IX, Section 9.02 B., in order to amend the Bylaws, "the Board of Directors shall propose the amendment . . . to the shareholders who shall have thirty days (30) in which to

object to the amendment."  As such, as a condition precedent to any valid amendment to the Bylaws, the Board of Directors **must** do two things (neither of which were done in this matter). First, the Board of Directors must provide notice of the proposed amendment to the shareholders. Second, the Board of Directors must give the shareholders no less than thirty (30) days to object. If, and only if, these conditions are met, and then only if there is no objection, can the Bylaws be amended.

Clearly aware of the requirement that only "shareholders" could fill vacancies on the Board of Directors, and that any amendment required at least thirty (30) days notice, on or about May 27, 2008, two members of the Board of Directors (with no notice to the shareholders) attempted to amend the Bylaws of Mirabilis.  It is undisputed that the Board of Directors did not comply with Section 9.02 B., of the Bylaws because the Board of Directors did not provide the required notice and wait thirty (30) days.  Instead, with no notice to the shareholders, and without waiting the required thirty (30) days, the Board of Directors passed "Amendment No. 1 to the Bylaws" and purported to amend both the provision of the Bylaws relating to filling vacancies on the Board of Directors as well as the provision regarding amendments to the Bylaws.  Of course, the intended result of the invalid amendment was to allow the Board of Directors to vote to fill its own vacancies and to allow the Board to amend the Bylaws without notice to the shareholders.  These actions were wholly contrary to the restrictions set forth in the Bylaws and impair the rights given to the shareholders.

Following the purported amendment to the Bylaws, and still on May 27, 2008, the only two remaining members of the Board of Directors (Jay Stollenwerk and Shane Williams) executed the "Action of Directors by Written Consent" and appointed a new director, Michael Moecker.  Mr. Stollenwerk and Mr. Williams then promptly resigned from their positions on the

Board of Directors.[4]   The new director, Mr. Moecker, then appointed R.W. Cuthill as the President of Mirabilis.   It was then Mr. Cuthill who retained Elizabeth Green and her firm to represent Mirabilis in the bankruptcy action.  All of this was orchestrated so that Mirabilis could file bankruptcy to try to prevent a final judgment from being entered against one of its subsidiaries in Richmond, Virginia. (As stated above, just one day after this maneuver, on May 28, 2008, Mirabilis filed for Chapter 11 bankruptcy).

The Bankruptcy Court ruled that the amendment to the Bylaws was permitted because the Bylaws were not adopted by the shareholders of Mirabilis.   The Bankruptcy Court, however, overlooked the sole evidence in the record on this very issue.  The Affidavit of Tom Broadhead was filed with the Bankruptcy Court on August 24, 2009. (DKT. 260).  In his Affidavit, Mr. Broadhead, who was the Secretary of Mirabilis, states in pertinent part as follows:

> "2.      I was Secretary for the MVI Board of Directors from October 2005 until January 2006 …
> 4.      Contrary to the factual assertions contain in [Mirabilis's Memo of Law] . . . I personally attended the MVI Shareholder meeting in October of 2005 in which the shareholder(s) ratified and adopted both the MVI Shareholder Agreement . . . and MVI Bylaws."

***

The sole record evidence is that the Bylaws were actually adopted by the shareholders. Any other factual finding by the Bankruptcy Court is clearly erroneous.  Since there was no valid amendment to the Bylaws, there could not be a valid election of the Board of Directors of Mirabilis on May 27, 2008.  Since Mr. Moecker was not duly elected, he had no authority to appoint Mr. Cuthill as President of Mirabilis.  Mr. Cuthill, therefore, had no authority to retain

---

[4] Although it is unclear as to whether Mr. Stollenwerk or Mr. Williams were ever even duly elected members of the Board of Directors, since they have resigned and because Mr. Moecker is not duly elected, there is currently no Board of Directors of Mirabilis and any and all actions it

Ms. Green as counsel for Mirabilis and has no authority now to act as "debtor in possession." As a result, the purported individuals controlling Mirabilis were not duly elected or appointed.

The term "duly" elected is interpreted by courts to mean proper in both form and substance and according to legal requirements, which means the existence of "every fact essential to perfect regularity of procedure." (Emphasis added.).  Welborn v. Whitney, 126 P. 2d 263 (Okla. 1942); Citizen's State Bank v. Moore, 57 P. 115 (Kan. 1899); Cheshire v. First Presbyterian Church, 17 S.E. 2d 344 (N.C. 1941); Robertson v. Perkins, 129 U.S. 233 (1889); 28 C.J.S., "Duly", p. 585.  A person who is not duly elected does not have the powers of a properly elected director or officer merely because he or she is placed onto the board of directors or appointed to office by vote of the shareholders or directors.  See, e.g., Richards v. Attleborough Nat'l Bank, 19 N.E. 353 (Mass. 1889) (holding that there was no valid election where a director failed to qualify for the position when elected); Wallace & Sons v. Walsh, 25 N.E. 1076 (Ct. App. NY 1890).

Based, therefore, on the failure of Mirabilis to comply with its own Bylaws, the election of its current "officers and directors" was invalid.  As a result, any actions taken by the current officers and directors have no legal force or effect.  Additionally, Mirabilis' current counsel does not have the proper authority to act on its behalf.  As such, this case should be dismissed because the current principals of Mirabilis and Hoth have no authority to maintain this action.

## IV.   THE ACTION TAKEN BY MIRABILIS WAS ALSO VOID AS A MATTER OF LAW UNDER NEVADA LAW AND GENERAL CORPORATE LAW.

The Bankruptcy Court also erred when it ruled that under Nevada law, the Board of Directors could amend the Bylaws since they were not adopted by the shareholders.  As stated

---

has taken since the resignation of Mr. Stollenwerk or Mr. Williams have been unauthorized actions.

above, this "factual" conclusion was not supported by the sole record evidence. Further, even as a matter of law, the action taken by Mirabilis was void under the Nevada Revised Statutes, Nevada law and general corporate law. Pursuant to N.R.S. 78.120, "[e]xcept as otherwise provided in this subsection and subject to the bylaws, if any, adopted by the stockholders, the directors may make the bylaws of the corporation." The Board of Directors adopted and made "bylaws of the corporation." Further, the Amended and Restated Articles of Incorporation mandates that all amendments to the Bylaws be made in the manner prescribed in the Bylaws.

Mirabilis contends that it can amend the Bylaws because they were not "bylaws adopted by the shareholders" and the Nevada statute allows directors to amend any bylaws unless prohibited by the "bylaws of the stockholders." In reality, the bylaws of the stockholders and bylaws of the corporation in this case are the very same thing as there is only one set of Bylaws. However, even if this Court were to adopt the Debtor's reasoning, once the Board of Directors enacted the Bylaws of the corporation, the Board of Directors were bound by the provisions set forth in the Bylaws.

Every shareholder has a legitimate interest in having the corporate business conducted in accordance with the bylaws established by the corporation and unless waived, and until repealed, the bylaws are the continuing rule for the governance of a corporation. Word of Life Ministry, 778 So. 2d at 360; Ihrig v. Frontier Equity Exchange Ass'n, 128 P.3d 993 (Kan. App. 2006); Schraft v. Leis, 236 Kan. 28, 35, 686 P.2d 865 (Kan. App. 1984); Gaddis v. Stardust Hills Owners Ass'n, Inc., 804 N.E.2d 231 (Ind. App. 2004)(Articles of Incorporation and Bylaws of a corporation constitute a contract between the corporation and its members); Rushing v. Gold Kist, Inc., 567 S.E.2d 384 (Ga. App. 2002)(The bylaws of a corporation are binding on the parties who enact them as contracts and must be construed according to the principles of the law

of contracts); <u>Hall v. Tennessee Dressed Beef Co.</u>, 957 S.W.2d 536  (Tenn. 1997) (Properly adopted bylaws constitute a binding contract between a corporation and its shareholders). Further, under Nevada law, the management and control of the affairs of a private corporation are vested in the board of directors, and the stockholders exercise their powers in the election of directors.  <u>Berman v. Riverside Casino Corp.</u>, 247 F.Supp. 243 (D.C. Nev. 1964).  Also, even under Nevada law, "**[a]ny vacancy** occurring in an office of the corporation by death, resignation, removal or otherwise, **must be filled as the bylaws provide**, or in the absence of such a provision, by the board of directors." (Emphasis added).  N.R.S. 78.130 (2008).

The Amended and Restated Articles of Incorporation and the Bylaws are contracts that provide important and valuable rights to the shareholders.  The Amended and Restated Articles of Incorporation and the Bylaws provide the exclusive manner in which directors can be elected, and amendments made to the governing documents.  Nevada law also provides that the election of directors is the province of shareholders.  The Board of Directors, therefore, were not at liberty to breach the terms of the Amended and Restated Articles of Incorporation and the Bylaws by passing amendments that took away the rights of the shareholders to vote for directors and approve amendments.  As such, the attempt by Mirabilis to take away the power of the shareholders to elect directors is contrary to Nevada law and cannot be permitted by this Court. Since Mr. Moecker and Mr. Cuthill were not elected pursuant to the Bylaws, they have not been duly elected and any actions they have taken have no force or effect.  This Court, therefore, should reverse the Bankruptcy Court and order the dismissal of this action.

## <u>CONCLUSION</u>

Mirabilis and Hoth are sham companies that have no standing to bring or maintain these bankruptcy cases because they are nothing more than admittedly fraudulent entities maintained for the purpose of committing a massive tax fraud.  Additionally, the fraudulent and criminal conduct of the controlling person, and alter ego, of these entities bars their ability to maintain a Chapter 11 case.  Moreover, these cases were not filed with the intent to reorganize, and as such, the cases should be dismissed or converted to Chapter 7 proceedings.  Further, the filing of these cases were *ultra vires* acts of Mirabilis and Hoth since they failed to duly elect the current officers and directors.  This Court, therefore, should reverse the Order of Appeal and remand this case to the Bankruptcy Court with directions to dismiss all pending adversary actions and the main bankruptcy cases.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of December, 2009, the foregoing was served by U.S. Mail delivery or was electronically served using the CM/ECF system to all parties in interest receiving electronic notice including, Scott Shuker, Esq., and Mariane Doris, Esq., Latham, Shuker, Barker, Eden & Beaudine, 390 North Orange Avenue, Suite 600, Orlando, Florida 32801.


         s/ Bart R. Valdes

DAVID H. SIMMONS
Florida Bar Number 240745
deBeaubien, Knight, Simmons,
 Mantzaris & Neal, LLP
332 North Magnolia Avenue
P. O. Box 87
Orlando, Florida 32802-0087
Telephone: (407) 422-2454
Facsimile: (407) 849-1845
dhs77@dbksmn.com

BART R. VALDES
Florida Bar Number 323380
de Beaubien, Knight, Simmons,
Mantzaris & Neal, LLP
609 W. Horatio Street
Tampa, Florida  33606
Telephone: (813) 251-5825
Facsimile: (813) 254-1063
brv11@dbksmn.com
Attorneys for Appellants